**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

IN RE EMPLOYMENT RECORDS          Case No. 4:17-mc-00238
OF JOHN DOES EMPLOYED BY
SHARPE HOLDING, INC.

APPLICATION FOR ORDER AUTHORIZING
THE DISCLOSURE OF PATIENT RECORDS

Pursuant to 42 U.S.C. § 290dd-2 and its implementing regulations (42 C.F.R. Part 2), the

Secretary of Labor R. Alexander Acosta respectfully requests this Court issue an Order allowing

the disclosure of employment records that, by their existence, will disclose the identities of

individuals who participated or are participating in a drug and alcohol rehabilitation program, as

well as the disclosure of participant identities for the purposes of interviewing them.  In support

of his Application, the Secretary states as follows:

**Background Facts**

Heartland Community is, according to its website, an "intentional Christian community"

located in northern Missouri.  The community (referred to generally as "Heartland") is made of

two distinct parts:  the ministries, which are grouped under the tax exempt entity CNS

International Ministries, Inc. ("CNSIMI"), and the businesses, which are generally under the

corporate umbrella of Sharpe Holding, Inc. ("Sharpe") and include a café, a steakhouse, a

concrete company, a welding and machine shop, a dairy, a general store, and an automobile

repair shop.  One part of CNSIMI's ministries is the Heartland Men's Recovery Program

("Recovery Program"), a twelve-month residential program established, per its website, "to

introduce the concepts of Christian living and personal responsibility, helping men . . . who are

bound with life-controlling addictions, attitudes, and behavioral problems."[1]  The Recovery Program houses approximately 125 men of all ages and from all over the United States.  As part of the program, participants work for and are paid by one of Sharpe's for-profit businesses.

In late 2016, the St. Louis office of Wage and Hour received a complaint from a former Recovery Program participant.  Specifically, the complainant raised concerns that the Recovery Program's pay practices violated the Fair Labor Standards Act ("FLSA"), including but not limited to the following:

1.     The complainant initially worked in the dairy but later performed other tasks outside of the dairy.  However, he did not receive overtime pay for any of the non-dairy work.[2]  Further, the complainant alleged he frequently worked off the clock.

2.     The Recovery Program holds all money earned by participants; personal banking accounts are not permitted.  Deductions to cover dormitory lodging, meals, transportation, and laundry are taken directly out of the participants' earnings, and the participants are given access to only a small portion of their wages.

3.     Any participant who leaves the program before his twelve-month commitment ends only receives up to twenty-five percent of all money earned.  The remainder of earnings (seventy-five percent or more) is forfeited.

Regarding points 2 and 3, Wage and Hour confirmed these policies via the program Handbook, a copy of which is attached as Exhibit A (at pages 11 and 7, respectively).[3]

---

[1]See generally http://heartlandmissouri.com/2012/12/heartland-recovery-program/ and http://hlandrecovery.org/for-men/

[2]Wage and Hour does not concede that hours worked in the dairy are exempt from the FLSA's overtime protection under 29 U.S.C. § 213(b)(13).

[3]An electronic copy of the Handbook can also be found at http://hlandrecovery.org/JesusIsTheAnswer/wp-content/uploads/2012/12/HMRChandbook2016.11.pdf

After speaking with complainant and conducting preliminary research, Wage and Hour visited Heartland's administrative building on March 1, 2017, to request records that an employer is required to maintain under 29 C.F.R. § 516.2(a), including:  (a) all time records (time cards or time sheets with daily start and stop times and any other records showing hours worked per day and per week) for each employee of any Sharpe entity for the period between March 2, 2015 to March 1, 2017 (the "time period"); (b) payroll records for each Sharpe employee during the time period that show gross and net pay and all deductions for each pay period; (c) a list of all salaried Sharpe employees, their titles, and weekly salary for the time period; and (d) a list of Sharpe employees employed during the time period with each one's address, phone number, position, rate of pay, date of hire and termination, and date of birth for anyone under eighteen at the date of hire.  See Exhibit B, letter from Wage and Hour. Additionally, Wage and Hour requested its investigators be allowed to interview current employees, including Recovery Program participants.[4]

At this point, Heartland consulted with outside counsel and ultimately refused to produce records for any employees, including the records of Recovery Program participants, based on federal law protecting the confidentiality of drug abuse patient records.  See Exhibit C, Letter from Heartland counsel.  The parties communicated several times over the subsequent weeks and came to the understanding that Wage and Hour could not obtain the information needed with regard to Recovery Program participants without Heartland disclosing the identities of

---

[4]Wage and Hour has statutory authority to examine records and interview employees under 29 U.S.C. § 211(a) ("The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter.").

participants.[5]  Indeed, Heartland's counsel expressed a willingness to produce the documents and allow the interviews with a court order.  See Exhibit D, Email from Heartland counsel ("However, absent a court order, we cannot allow you to interview employees of CNSIMI or Sharpe Holdings because interviewing employees would possibly reveal the identity of persons within the drug and alcohol treatment program.  My client does not object to you coming on site and performing interviews of employees if the Court orders it.").  As such, Wage and Hour commenced this action.

## Legal Analysis

### A.      Authorization to Disclose Drug and Alcohol Treatment Records

Federal law mandates the strict confidentiality of information about all persons receiving substance abuse prevention and treatment services.  42 U.S.C. § 290dd-2; 42 C.F.R. Part 2 ("Part 2").  Part 2 restricts the disclosure and use of information that would identify (directly or by implication) a patient as a drug or alcohol abuser and that was obtained by a federally-assisted substance abuse program (a "Part 2 program") for the purpose of treatment, diagnosis, or referral for treatment.  42 C.F.R. § 2.12(a).  Part 2 programs are drug or alcohol abuse programs that:  (1) hold themselves out as providing substance abuse disorder treatment and (2) derive some type of benefit from the U.S. government, including those that have non-profit status under the federal tax code.  Id. at § 2.12(e)( l) and (b).  Such information may only be disclosed with the consent of the person with respect to whom such record is maintained or, when such consent is not given, in a limited number of circumstances, including by court order when "good cause" is shown.  42 U.S.C. § 290dd-2(b).  "In assessing good cause the court shall weigh the public interest and the

---

[5]Heartland did offer to produce records with all identifying information redacted.  See Exhibit D. However, as explained in more detail below, obtaining the data without any names attached will not provide all the evidence needed for Wage and Hour to conduct its investigation.

need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services."  Id. at § 290dd-2(b)(2)(C).

However, before a court determines whether good cause exists, it must, as a threshold matter, determine if the information sought covers "confidential communications."  In re Marvin M., 711 A.2d 756, 570-71 (Conn. App. 1998).  The regulations permit the disclosure of confidential communications – those "made by a patient to a program in the course of diagnosis, treatment, or referral for treatment" – only in three specific situations, none of which apply to the case at bar.  42 C.F.R. § 2.63(a).  However, if the disclosure sought is objective data, such as facts or dates of enrollment, discharge, and attendance, a petitioner need only show good cause. See In re Aug., 1993 Regular Grand Jury (Hosp. Subpoena), 854 F. Supp. 1380, 1384 (S.D. Ind. 1994) ("Distinguishing between confidential communications and other information thus still has a significant effect: Ordinary, run-of-the-mill objective data (i.e. not confidential communications) is disclosable if the Government meets the 'good cause' test established in § 290dd–2(b)(2)(C); confidential communications, on the other hand, are disclosed only if the 'good cause' test is met and one of the three express circumstances of disclosure outlined in § 2.63(a) is also established.").[6]

Situations in which the information sought is "objective", and therefore the movant must only show good cause, are covered under 42 C.F.R. § 2.64 through § 2.66.  Specific to our case is section 2.66, which allows "any administrative, regulatory, supervisory, investigative, law enforcement, or prosecutorial agency having jurisdiction over the [Part 2] program's . . .

---

[6]"Prior to an amendment in 1987, the regulations [42 C.F.R. § 2.63(a)] explicitly denominated this latter category as 'objective data,' consisting of all information regarding a patient's treatment in a program except 'communications by a patient to personnel of the program. . . .'  The subsequent amendment inverted the phrasing of the regulations and is now positively drafted in terms of 'confidential communications.'"  Id.

activities"[7] to apply for a court order when the patient records will be used to "to investigate or prosecute a part 2 program" and "are needed to provide material evidence".  Id. at § 2.66(a). Notably, unlike when patient records are disclosed for other purposes, there is no requirement under section 2.66 that patients whose records will be released be given notice of the disclosure. Id. at § 2.66(b).  Regarding good cause, the regulations explain that it exists when:  (1) other ways of obtaining the information are not available or would not be effective; and (2) the public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship, and the treatment services.  Id. at § 2.64(d) (as incorporated and made applicable to administrative investigations of programs by § 2.66(c)).

Finally, once a court grants a movant's application, it must make sure that its order limits disclosure to "those parts of the patient's record which are essential to fulfill the objective of the order", limits who receives the disclosures to "those persons whose need for information is the basis for the order", and "include such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services."  Id. at § 2.64(e)) (as incorporated and made applicable to administrative investigations of programs by § 2.66(c)).

### B.    Wage and Hour has Good Cause to Obtain the Requested Records

Wage and Hour has statutory authority to inspect employer records and speak with employees.  As previously stated, the information sought is only peripherally related to drug or alcohol treatment records, in that Wage and Hour requests payroll records of and interviews with Sharpe employees, including those affected by the Recovery Program's policies, which will

---

[7]Heartland's counsel "concedes that the DOL has jurisdiction for purposes of its Wage and Hour Division investigation."  See Exhibit D.

necessarily require the disclosure of participant identities.  But Wage and Hour can show the good cause necessary for disclosure.

       1.      <u>*Wage and Hour cannot effectively obtain the information by other means.*</u>

Wage and Hour is seeking payroll records for a two year period from March 2, 2015 to March 1, 2017, for all Sharpe employees, which includes participants in Heartland's Recovery Program.  Because deductions were taken from Recovery Program participants' pay that were not taken from other employees, such documents will necessarily reveal the identities of the participants.  But it is only through reviewing these records and speaking with participants about their employment that Wage and Hour will be able to investigate the complaints it received concerning Heartland's pay practices.

This situation is similar to <u>In re Aug., 1993 Regular Grand Jury (Hosp. Subpoena)</u>, 854 F. Supp. 1380, which concerned an ongoing criminal investigation into a psychotherapist's overbilling.  As part of the investigation, a grand jury requested records from a hospital at which the psychotherapist worked, including billing information, discharge summaries, and admissions summaries.  Because the records would show the identities and other information regarding patients who sought treatment for drug addiction and alcoholism, the hospital moved to quash the grand jury subpoena.  <u>Id.</u> at 1381-82.

In determining whether there was good cause to release the records, the court noted that it was not necessary for the government to show that the hospital records were the *only* way to obtain the information.  "Merely acknowledging alternative sources exist does not, however, sound the deathknell [*sic*] for the Government's motion; if those sources are not 'available or would not be effective,' the Government may still have the records."  <u>Id.</u> at 1386.  Specifically, the government could have asked patients or employees of the hospital to testify about

procedures underwent and cost billed, but "[t]o successfully prosecute a health care provider for overbilling, the Government must be able to demonstrate the amounts billed exceeded the actual services rendered to patients – a task requiring more than the casual recollections of possibly disinterested witnesses." Id.[8]

Likewise, Wage and Hour needs to have specific information about the amount of work performed, the amount paid for each hour worked, the amount and kind of deductions taken from wages for each participant.  Such detailed information must come from the payroll records themselves.  The aim of its investigation is not just to establish whether Heartland violated the FLSA but, if such violations exist, to also obtain back wages for employees who did not receive their full, lawful pay.  Without payroll records – and the identity of the employees to whom the time records belong – Wage and Hour cannot fully effectuate its purpose.  Moreover, Wage and Hour needs to speak with as many current and former participants as it can to determine whether their work fell under any FLSA exemptions.  Specifically, Heartland claims work performed at its dairy is within the agriculture exemption, 29 U.S.C. § 213(b)(13), but Wage and Hour needs to determine if employees performed tasks outside of the dairy while still being classified as exempt dairy workers and, therefore, were denied overtime pay.  Unless Wage and Hour can interview participants, it will not be able to determine if these people were being paid properly.

2. *Potential injury to the Recovery Program participants is slight and significantly outweighed by benefit to them and the public.*

If allowed disclosure of the documents, Wage and Hour will be able to determine whether the complainant's allegations can be substantiated and whether participants are owed

---

[8]But compare with U.S. v. Graham, 548 F.2d 1302 (8th Cir. 1977) (where defendants sought drug treatment records of witness testifying against them, court "fully concur[red]" with the District Court that the defendants' cases would not have been aided by release of the records. [Witness] Allen was subjected to extensive cross-examination on her use of heroin and nothing in her records could have provided any additional basis for attacking her credibility."); State ex rel. C.J.V. v. Jamison, 973 S.W.2d 183, 187 (Mo. Ct. App. 1998) (finding husband has not established the "need for disclosure" in divorce action in which he sought wife's records from alcohol treatment center, where wife's testimony regarding treatment would be sufficient).

money for work performed.  Not only would this benefit them monetarily, but it would also help ensure Heartland's compliance with regard to future participants.  Indeed, the FLSA is in itself a "remedial statute, enacted in the public interest."  <u>Lynnville Transp., Inc. v. Chao</u>, 316 F. Supp. 2d 790, 798 (S.D. Iowa 2004); <u>see</u> <u>also</u> <u>In re Aug.</u>, 854 F. Supp. at 1386 ("Beyond the possible private harm incurred by private insurers, the target of the investigation supposedly overbilled public medical insurance programs (medicare and medicaid [*sic*]) resulting in excess costs to taxpayers and the diversion of monetary resources from legitimate to illegitimate ends. Considering both the private and public harm at issue, assigning great value to the public interest is not difficult.")

But, even if Wage and Hour does not find violations of the FLSA, the risk of injury to participants is so slight that it is easily outweighed.  Wage and Hour is not seeking any information regarding the type of treatment participants received, the participants' past history with drug and/or alcohol abuse, or even why the person is participating in the program.  The only information that will be conveyed is identifying the person as part of the Recovery Program. Although such information is still protected by federal statute, it is hardly equivalent to the intimate details that other courts have allowed.  <u>See</u>, <u>e.g.</u>, <u>In re Marvin M.</u>, 711 A.2d at 570-71 (upholding lower court's order to disclose intake records, discharge records, attendance records, drug screen test results, and records indicating compliance and noncompliance with treatment programs in termination of parental rights case); <u>State Bd. of Med. Examiners v. Fenwick Hall, Inc.</u>, 419 S.E.2d 222, 224 (S.C. 1992) ("The potential harm to the physician, the physician-patient relationship, and the treatment services does not outweigh the need for disclosure where the patient is practicing medicine and the disclosure is to be made to the Board for a confidential investigation.  The records are essential to the Board's investigation of the Doctor and its

9

determination of the Doctor's fitness to practice medicine."); <u>U.S. v. Hopper</u>, 440 F. Supp. 1208, 1211 (N.D. Ill. 1977) (allowing disclosure of full treatment records in probation hearing: "This Court does not wish to undermine the efficacy of drug abuse programs.  Neither, however, can it ignore its responsibility both to Mr. Hopper and the public.  This Court has continuing supervisory authority over Mr. Hopper during the period of his probation, the effectiveness of which could be seriously hampered if important information pertaining to the conditions of probation is unavailable to the Court.").

### C. <u>Wage and Hour Will Safeguard the Participants' Identities</u>

As required by any order issued by this Court under 42 C.F.R. § 2.64(e), Wage and Hour understands that the identity of an employee as a Recovery Program participant must be kept in confidence.  The Department is used to working with sensitive personal information and will protect the participants' status as such.

WHEREFORE, the Secretary respectfully requests this Court enter an Order pursuant to 42 U.S.C. § 290dd-2(b)(2)(C), authorizing Heartland to release any and all payroll records of its Recovery Program participants and allowing Wage and Hour to interview said participants.

Respectfully submitted,

Nicholas C. Geale
Solicitor of Labor

Christine Z. Heri
Regional Solicitor

H. Alice Jacks
Associate Regional Solicitor

 /s/ Traci Martin
Traci Martin
MO Bar No. 59796

Two Pershing Square Building
2300 Main Street, Suite 1020
Kansas City, MO 64108
(816) 285-7272
(816) 285-7287 (fax)
martin.traci.e@dol.gov

*Attorneys for the Secretary*
*United Sates Department of Labor*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Application for Order Authorizing the
Disclosure of Patient Records was sent via first-class mail this 28th day of April, 2017, to:

Bryan D. LeMoine
McMahon Berger PC
2730 N Ballas Rd., # 200
St. Louis, MO 63131
314-802-1888
lemoine@mcmahonberger.com

*Attorneys for CNS International Ministries, Inc.*
*and Sharpe Holding, Inc.*


/s/ Traci Martin